# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:05-cr-41 |
| | ) | (2:10-cv-221) |
| ANSELMO ZEPEDA, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## <u>OPINION AND ORDER</u>

This matter is before the Court on the Motion Under 28 U.S.C. Section 2255 To Vacate, Set Aside, And Or Correct Sentence, filed by Petitioner, Anselmo Zepeda, on June 1, 2010. For the reasons set forth below, the section 2255 motion is **DENIED**. The Court notes that the claims raised that relate to Case Numbers 05-CR-471 (N.D. Ill.), 98-CR-10095 (C.D. Ill.), and 02-CR-172 (N.D. Ill.), are not addressed in this order as they relate to other judgments. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Anselmo Zepeda, #08289-027, Atlanta-FPC, P.O. Box 150160 Lakewood Station, Atlanta, GA 30315-0182, or to such other more current address that may be on file for the Petitioner.

<u>BACKGROUND</u>

In the caption of the instant 2255 Petition, Zepeda includes the following case numbers: 05-CR-471 (N.D. Ill.), 98-CR-10095 (C.D. Ill.), 02-CR-172 (N.D. Ill.), and 05-CR-41 (N.D. Ind.). He then proceeds to advance numerous arguments, without specifying which claim goes with which case/conviction. As this Court noted in its order dated March 21, 2011 (DE #262), this runs contrary to Rule 2(d) of the Federal Rules Governing Section 2255 Proceedings for the United States District Courts, which states: "[a] moving party who seeks relief from more than one judgment must file a separate motion covering each judgment." "The 2004 Advisory Committee Notes to Rule 2(d) caution that dismissal for failure to file a § 2255 petition in the proper form poses a significant penalty against a prisoner in light of the one-year statute of limitations, and that the better approach is to accept a defective petition and require resubmission in proper form." *Hatcher v. United States*, No. O5-CV-74194, 2006 WL 1795094, at *3 (E.D. Mich. June 28, 2006).

Thus, in the best interests of the Petitioner, the Court declined to dismiss the petition without prejudice. Rather, it accepted the instant motion, and ordered Zepeda to resubmit it in proper form on or before April 20, 2011. That deadline has now passed, and Zepeda did not resubmit his § 2255 petition. Thus, this Court will try to parse out the claims, and consider only those claims in the motion that relate to the sentence imposed by

this Court. *See Arreola-Lopez v. United States*, No., 06-cr-30077-MJR, 2008 WL 5095958, at *1 (S.D. Ill. Nov. 26, 2008) (severing a claim attacking a separate judgment, and opening a new civil case for that claim).

Although the Court would have traditionally severed out the other claims, like the Court in *Arreola-Lopez*, this case is different. After consulting the other dockets, the Court has found that Zepeda also filed a section 2255 petition in the Central District of Illinois in Case No. 98-CR-10095, and the Central District of Illinois has already analyzed and rejected those claims because they were untimely. *See United States v. Zepeda*, No. 10-1166, 2010 WL 2522997 (C.D. Ill. June 15, 2010). Additionally, Zepeda filed an identical 2255 Petition in the Northern District of Illinois, and that Court has ordered a hearing on Zepeda's section 2255 motion as it relates to Case Nos. 02-CR-172 and 05-CR-471 (*see* civil docket for Case #1:10-cv-02972 in the Northern District of Illinois, DE #6). Thus, there is no need to sever the claims that do not relate to this conviction - the other courts are aware of the claims, and have either already addressed them (the Central District of Illinois), or are in the process of addressing them (the Northern District of Illinois).

Also, the Court notes that the last few pages of the instant section 2255 petition, all filed at the same time, and filed in the same document, are entitled "Motion to Amend The Original 28 U.S.C.

2255." To the extent this section of the petition contains pertinent claims to this case, the Court will consider them as well.

On December 22, 2005, Anselmo Zepeda was charged in a superseding indictment with three counts of distributing and conspiring to distribute controlled substances (cocaine and marijuana), in violation of 21 U.S.C. § 841(a)(1) and § 846. At the arraignment, he pleaded not guilty. On May 30, 2006, Zepeda entered a plea of guilty as to Count 4 of the superseding indictment, conspiracy to distribute 5 kilograms or more of cocaine.

At the change of plea hearing held before this Court on May 30, 2006, Zepeda said his involvement in the conspiracy to distribute cocaine began in September 2004, and lasted until March 2005 when he was arrested. (May 30, 2006 Hr'g Tr., pp. 25-26.) Zepeda admitted he helped pack a truck full of cocaine. (*Id.*, p. 27.) He also stated he acted as an interpreter for the people who had packed the truck full of cocaine in Texas, so that they could deliver the cocaine to another individual in Gary, Indiana, and that he helped these individuals get license plates for this truck in Mississippi, knowing they were going to use the truck to bring cocaine from Texas to Indiana. (*Id.*, pp. 27-32.) Once the truck was in Indiana, Zepeda again acted as an interpreter, and then delivered the approximately 80 kilograms of cocaine to another

person, with whom he counted it. *Id.* Following these admissions, this Court accepted Zepeda's plea of guilty to Count 4 of the superseding indictment. The sentencing hearing commenced on June 22, 2007, and was continued to allow Zepeda's counsel to file a supplemental brief on sentencing factors, which counsel filed on July 7, 2007 (DE #210).

Zepeda's sentencing hearing recommenced on July 9, 2007. Zepeda's counsel, Ms. Andrea Gambino, argued that the § 3553(a) factors warranted a mandatory minimum sentence of 10 years. (July 9, 2007 Sentencing Hr'g Tr., pp. 4-22.) Specifically, she argued that he was 51 years old, Zepeda had both diabetes and high blood pressure, he was responsible for his two minor children, and he lacked a criminal record. *Id.* Thus, Gambino argued Zepeda should receive a mandatory minimum sentence of 10 years, which was well below the Guideline range of 210-262 months imprisonment.

In response, Assistant United States Attorney David Nozik argued for the Government that the sentence should be within the Guideline range, pointing out that Zepeda possessed a gun during the course of the conspiracy, he admitted to being a leader or organizer of the conspiracy, and that the amount of cocaine involved (50-150 kilograms) was a large amount of cocaine. (*Id.*, p. 23-25.) The Government also noted that Zepeda was currently facing three other federal indictments, one of which he had already been convicted of in the Northern District of Illinois. (*Id.*, p.

40.)  Further, the Government argued that Zepeda did not qualify for the safety valve reduction, and the Defendant agreed the safety valve was inapplicable.  (*Id.*, p. 25.)

Having heard arguments from both sides, the Court then noted that the Presentence Investigation Report (to which there were no objections), included statements given by Zepeda's co-defendnats indicating that Zepeda was very involved in the drug business, and that Zepeda was involved with 20 guns, and an attempted kidnaping. (*Id.*, p. 26.)  This Court then sentenced Zepeda to 210 months imprisonment (the bottom of the Guideline range).

Ms. Gambino filed Zepeda's notice of appeal on July 23, 2007. On December 17, 2007, the Seventh Circuit discharged Gambino, and appointed Robert Handelsman as counsel for Zepeda's appeal (DE #221).  Handelsman moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because he could not discern a nonfrivolous issue to pursue.  *United States v. Zepeda*, No. 07-2761, 2009 WL 1360983, at *2 (7th Cir. May 11, 2009).

During the appellate process, a discrepancy was recognized between the transcript of Zepeda's sentencing hearing (which reflected a 150-month prison term) and the written judgment, which recorded the term as 210 months.  *Id*. at *1.  On May 11, 2009, the Seventh Circuit ordered a limited remand asking this Court to determine whether the transcript of Zepeda's sentencing accurately reflected the term of imprisonment pronounced from the bench.  This

Court listened to a recording of the hearing and discovered that the transcript was in error - the term pronounced from the bench was 210 months, the same as reflected in the written judgment. The transcript was corrected. The Seventh Circuit found that because Zepeda had presented no other argument on appeal, it affirmed the judgment of this Court. *United States v. Zepeda*, No. 07-2761, 2009 WL 1784077, at *1 (7th Cir. June 24, 2009).

Zepeda's motion is confusing. Because he did not take advantage of the opportunity to re-submit it, this Court is left with addressing his claims as best as it can. Zepeda seems to advance 5 claims in attacking four federal convictions (only one in front of this Court), but this Court will only address the issues arising from this judgment in this Court. *See Brown v. United States*, No. 3:04-0339, 2005 WL 2290999, at *1 (M.D. Tenn. Sept. 20, 2005) (addressing only the issues arising from that Court's particular judgment).

In the instant 2255 Motion, Zepeda's first stated ground for relief is that he received ineffective assistance of counsel, *inter alia*, because counsel "did not file an [sic.] direct appeal for one of Mr. Zepeda cases." (2255 Mot., p. 3.) Because it is clear in this case that Ms. Gambino did file a direct appeal of Zepeda's sentence in the Northern District of Indiana on July 23, 2007 (DE #213), this claim does not relate to this case and will not be addressed by the Court.

7

Zepeda also claims that his Fifth and Sixth Amendment rights were violated because he was not arraigned on superseding indictments. (2255 Mot., pp. 3,7.) Again, the record reflects in this case that Zepeda was arraigned on his superseding indictment on January 9, 2006 (DE #110). Therefore, this Court will not address this argument.

Further, Zepeda argues that several of his indictments were time-barred (2255 Mot., p. 7), and that an indictment charging him with a conspiracy that started in 1996 was barred by both the statute of limitations and res judicata (*Id.*, pp. 8, 10). For a non-capital offense, an indictment must be filed within five years from the date the alleged offense was committed. 18 U.S.C. § 3282. In this case, in both the original and superseding indictment, the earliest offense Zepeda was charged with was a conspiracy to distribute cocaine and marijuana that began in November 2002. (DE #104.) This charge was contained in Count Four of the superseding indictment, filed on December 22, 2005, well within the five-year statute of limitations. (DE #104.) Thus, the charges in the original indictment and superseding indictment in this district were timely.


DISCUSSION

Relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812,

816 (7th Cir. 1996). In order to proceed on a petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.* A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; see also Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Zepeda's motion, the Court is mindful of the

well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Zepeda's claims with these guidelines in mind.

   In the instant 2255 Motion, Zepeda alleges that "his guilty

plea was not willingly nor voluntarily entered." (2255 Mot., p. 5.) Although he does not specify in which case he is alleging that his guilty plea was not willingly entered, because Zepeda did enter a plea in this case, the Court will address this claim as it relates to Zepeda's guilty plea to conspiring to distribute cocaine in the current case (No. 2:05-cr-41).

Zepeda thus raises a constitutional error, as a guilty plea is constitutionally required to be voluntary. *See McCarthy v. United States*, 394 U.S. 459, 465 (1969). However, because Zepeda failed to raise this issue on his direct appeal, it has been procedurally defaulted. "When, however, issues raised in a section 2255 proceeding have not been raised in a direct appeal, the party seeking relief must establish cause and prejudice for the failure." *Precin v. United States*, 23 F.3d 1215, 1217 (7th Cir. 1994) (citation omitted). It is true that under some scenarios, "ineffective assistance of counsel may excuse a procedural default." *Id*. at 1218 (citing *Van Russell v. United States*, 976 F.2d 323, 327 (7th Cir. 1992)). Because Zepeda claims that his "counsel on the guilty plea and the appeal confused and deceived [him]," (2255 Mot., pp. 4-5), Zepeda seems to be making this claim.

To succeed on an ineffective assistance claim, Zepeda must demonstrate: "(1) deficient performance by the attorney, and (2) prejudice from the representation." *Precin*, 23 F.3d at 1218 (citing *Lockhart v. Fretwell*, 506 U.S. 364, 368 (1993)). The first prong is

11

satisfied "by showing that the attorney's performance fell well outside the range of professionally competent representation." *Id.* (citing *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1998)). To satisfy the prejudice prong, Zepeda "must show that the errors deprived him of a fair trial." *Id.*

With regard to this conviction, Zepeda seems to argue 3 reasons why Ms. Gambino's assistance was ineffective: (1) she forced Zepeda to plea guilty four different times for the same conspiracy, gave him bad advice, and promised to get him a ten year sentence if he pled guilty (2255 Mot., pp. 1, 2, 4); (2) she should have had Zepeda sentenced in only one proceeding under U.S.S.G. § 5G1.2 (*Id.*, p. 10); and (3) that she prevented Zepeda from receiving a safety-valve reduction (*Id.*, p. 11). Each argument will be addressed *in seriatum.*

First, although an ineffective of assistance claim can constitute "cause" for a procedural default in failing to raise an issue on direct appeal, this does not hold true if the defendant had separate trial and appellate attorneys. As the Seventh Circuit noted in *Dugan v. United States*, 18 F.3d 460, 464 (7th Cir. 1994), the "[petitioner] had separate trial and appellate attorneys, so there is no reason why [petitioner's] appellate attorney could not have raised an ineffective assistance of trial counsel claim on [petitioner's] direct appeal." Therefore, because the petitioner in *Dugan* "failed to present his ineffective assistance of counsel

claim at the earliest feasible opportunity," the Court found he was "procedurally barred from seeking relief under § 2255." *Id.* "[W]here a defendant offers no extrinsic evidence to support his claim of ineffective assistance of counsel and he was represented by different counsel on appeal, that defendant must bring that claim on direct appeal or face procedural default for failing to do so." *McCleese*, 75 F.3d at 1178.

In this case, Ms. Gambino was Zepeda's attorney at his plea hearing, his sentencing hearing, and when he filed his notice of appeal on July 23, 2007. However, on December 17, 2007, the Seventh Circuit discharged Gambino as Zepeda's counsel and appointed Handelsman as counsel. Thus, under *Dugan*, Zepeda is procedurally barred from raising an ineffective assistance of counsel claim in this motion, because he could have brought it in the direct appeal. *Dugan*, 18 F.3d at 464. As the Government points out, though, the line is a little blurrier in this case because Gambino did serve as Zepeda's appellate counsel for approximately 5 months before Handelsman was appointed. However, there was no reason that Zepeda could not have made his ineffective assistance of counsel claim through Handelsman, at the "earliest feasible opportunity," during his direct appeal. *Id*.

To be procedurally barred under *Dugan*, the defendant has to offer no extrinsic evidence to support his claim of ineffective assistance of counsel. At least one of Zepeda's claims could be

13

satisfied by offering no extrinsic evidence - his argument that Gambino prevented him from benefitting from the "safety valve" Guideline Provision can be evaluated based on the transcript from the sentencing hearing alone. Specifically, the AUSA made an unopposed statement that "the defendant agrees he does not qualify for [the safety valve provision] in this case." (July 9, 2007 Sentencing Hr'g Tr., p. 25.) Arguably, the three other claimed instances of ineffective assistance could implicate extrinsic evidence because they overlap with Zepeda's indictments in the other districts. Therefore, in an abundance of caution, the Court will analyze whether those 3 claims properly constitute ineffective assistance of counsel.

Even assuming, *arguendo,* that the claims of ineffective assistance of counsel are properly raised for the first time in this petition, Zepeda's claims still fail. Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th

Cir. 2001). The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the deficient-performance prong, great deference is given to counsel's performance and the defendant has a heavy burden to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted). Defendant must establish specific acts or admissions to fall below professional norms. *Strickland*, 466 U.S. at 690. Trial counsel "is entitled to a 'strong presumption' that his performance fell 'within the range of reasonable professional assistance' and will not be judged with the benefit of hindsight.'" *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 689). If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *Id.* at 697.

Here, Zepeda has not shown that Gambino's overall performance fell below an objective standard of reasonableness. Zepeda claims that Gambino forced him to plead guilty "four different times for the same conspiracy" (2255 Pet., p. 2), and that she gave him "erroneous" advice (2255 Pet., p. 4). Zepeda's mere speculation is not enough. Zepeda "must establish specific acts or omissions of

his counsel which constitute ineffective assistance." *Coleman*, 318 F.3d at 758. Zepeda presents no affidavit from himself or his trial counsel, or any other evidence supporting his version of the events. *See, e.g., Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("lest it sound like a formidable task (to prove his lawyer's nonfeasance), we note that the sort of evidence usually employed in such cases begins with sworn affidavits attesting to the petitioner's allegations"); *United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir. 1989) (finding no ineffectiveness of counsel where petition not supported by any evidence of attorney's failure to advise client other than petitioner's "bare allegations"). Here, Zepeda has provided neither an affidavit from himself nor his trial counsel, or any other evidence to support his claims.

Zepeda also claims that Gambino provided him with ineffective assistance of counsel because she told Zepeda he would get a 10-year sentence. To find that Zepeda's guilty plea "was involuntary as a result of ineffective assistance of counsel, his attorney must have given advice that falls below prevailing professional norms." *Coleman*, 318 F.3d at 758 (citing *Chichakly v. United States*, 926 F.2d 624, 628 (7th Cir. 1991)). However, the Seventh Circuit has held that "[a] plea is not rendered involuntary merely because a prediction that a guilty plea will result in a light sentence does not come true." *Chichakly*, 926 F.2d at 630 (quoting *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975)). "An attorney obviously

16

is not able nor is he expected to predict with precision the sentence a judge will impose in order to render effective assistance of counsel. . . ." *Id.* Moreover, Zepeda's claim is contradicted by the record. He was clearly advised by this Court during the change of plea hearing that he faced a mandatory minimum jail term of ten years. (May 30, 2006 Change of Plea Hr'g Tr., pp. 13-14.) This Court explained the definition of a "minimum" sentence and specifically advised Zepeda that "[t]he least that you could get would be ten years in jail – there's a mandatory minimum." (*Id.*, p. 14.) The Court went on to advise Zepeda that the maximum he could get for Count 4 was life in prison. *Id.* Then the Court reminded Zepeda that "of course you understand your sentence could be somewhere between the minimum and the maximum, as I have just described?" and Zepeda answered, "[t]hat's fine." *Id.* The Court went on to advise Zepeda of the factors it would consider in fashioning a sentence, and determining if the Guideline range is fair and reasonable, including his criminal record, the type and quantity of drugs involved, his role in the operation, whether weapons were involved, and acceptance of responsibility. (*Id.*, pp. 17-20.) Thus, Zepeda was notified of the possible range of penalties. Finally, Gambino did vigorously argue during Zepeda's sentencing that he should receive the 10-year mandatory minimum sentence because of his age, health conditions, responsibility for two minor children, and his lack of a criminal record. (July 9,

2007 Sentencing Hr'g Tr., pp. 21-35.)  In sum, Zepeda has not shown
that Gambino acted outside the wide range of professionally
competent assistance.

Next, Zepeda contends that Gambino was ineffective because she
did not consolidate his sentences in his four federal cases into one
proceeding pursuant to U.S.S.G. § 5G1.2.  Section 5G1.2 Application
Note 1 provides that, "[t]his section applies to multiple counts of
conviction (A) contained in the same indictment or information, or
(B) contained in different indictments or informations for which
sentences are to be imposed at the same time or in a consolidated
proceeding."  U.S.S.G. § 5G1.2.  Zepeda argues that under subsection
(B), Gambino should have argued to consolidate his sentences into
one proceeding.  As the Tenth Circuit states, "Application Note 1
to § 5G1.2 is seldom applied and, unsurprisingly, there is a dearth
of case law interpreting it."  *United States v. Herula*, 464 F.3d
1132, 1136 (10th Cir. 2006).  Therefore, it cannot be said that
Gambino acted below the professional level of conduct in not raising
this issue.  Moreover, Zepeda's convictions were for charges in
indictments in three different federal districts.  At the time he
was sentenced in this Court, he had not even been convicted of two
of the other charges.  (July 9, 2007 Sentencing Hr'g Tr., p. 24.)
The Seventh Circuit has specifically held that § 5G1.2 applies when
the sentences have formally been consolidated or "two sentences are
imposed sequentially by the same judge on the same day."  *United*

*States v. Greer*, 91 F.3d 996, 1000-01 (7th Cir. 1996)(following the reasoning in *United States v. Hernandez Coplin*, 24 F.3d 312 (1st Cir. 1994)). This was not the case here, where this Court only imposed one sentence, and at that time, Zepeda had not yet been convicted of two of the charges in different federal districts.[1]

Zepeda also argues that Gambino was ineffective when she allowed the Government to add "guns" to the charges, preventing Zepeda from receiving a downward adjustment under the "safety valve" provision of the Sentencing Guidelines, U.S.S.G. § 5C1.2. Under this provision, a Court can adjust an offense level downward if the defendant demonstrates that: (1) he has no more than one criminal history point; (2) he did not possess or use a firearm in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) he was not an organizer or leader of the criminal activity; and (5) he made a good faith effort to cooperate with the Government. *United States v. Harris*, 230 F.3d 1054, 1058 (7th Cir. 2000); *see* 18 U.S.C. § 3553(f); U.S.S.G. §

---

[1]Section 5G1.3 applies to imposing a sentence on a defendant subject to an "undischarged term of imprisonment," however, Zepeda does not argue that it is applicable in this case. Regardless, the Seventh Circuit has held that failure to raise Section 5G1.3 was not ineffective assistance of counsel because "[a]lthough [petitioner] may wish his trial counsel had claimed this guideline provision applied, failure to do so is not ineffective assistance . . . [t]his discretion to sentence [petitioner] means that only the possibility existed he would receive a concurrent sentence . . . . A mere *possibility* of prejudice does not qualify as *actual* prejudice." *Prewitt v. United States*, 83 F.3d 812, 818-19 (7th Cir. 1996) (emphasis in original).

5C1.2.  If a defendant fails to meet all five criteria, courts have held that counsel need not argue for the applicability of the safety valve, because the argument would be frivolous.  *See, e.g., United States v. Quintanilla*, No. 02-4279, 2003 WL 22977483, at *2 (7th Cir. Dec. 17, 2003) (finding it would have been frivolous to make argument that safety valve provision applied where defendant had three criminal history points); *United States v. Herrea-Ruiz*, No. 00-1340, 2000 WL 973622, at *1 (7th Cir. June 13, 2000) (finding it frivolous to appeal argument that counsel was ineffective for not arguing defendant was entitled to safety valve reduction where defendant conceded he did not meet the fifth criteria).  Further, it is notable that when defense counsel opts to argue for a sentence at the low end of the sentencing range instead of a safety valve reduction, this can be a reasonable strategic decision to which courts have granted deference.  *See, e.g., Harris v. United States*, 366 F.3d 593, 596 (7th Cir. 2004).

In addressing Zepeda's argument, he claims that Gambino "allowed the Assistant U.S. Attorney to put the gun in the indictment, destroying [his] chance of getting a [safety-valve reduction]." (2255 Pet., p. 13.) This argument misses the mark - regardless of whether Zepeda possessed a firearm in connection with the offense, a defendant must satisfy all five of the criteria to be entitled to a safety-valve reduction.  Here, it is undisputed that Zepeda had more than one criminal history point because he was

already convicted of an offense in the Northern District of Illinois. Additionally, Zepeda admitted to being an organizer or leader of the conspiracy to distribute cocaine - he testified that he had people underneath him, that he ordered some people to deliver cocaine for him, he hired truck drivers and got plates for trucks, and counted the cocaine with another person. (July 9, 2007 Sentencing Hr'g Tr., pp. 23-24; Plea Hr'g Tr., pp. 27-32.) Thus, even assuming, *arguendo*, that Zepeda did not possess a weapon, he still would not have qualified for the safety valve reduction, because he did not satisfy at least two other prongs. Tellingly, during the sentencing hearing held before the Court, Defendant agreed he did not qualify for the safety valve reduction. (July 9, 2007 Sentencing Hr'g Tr., p. 25.) As such, Gambino's failure to argue for the reduction is not ineffective assistance. *Quintanilla*, 2003 WL 22977483, at *2; *Herrea-Ruiz*, 2000 WL 973622, at *1.

In sum, the Court concludes that Gambino did not perform below an objective standard of reasonableness. As the Court in *Strickland* found, if one prong of the test for ineffective assistance of counsel is not satisfied, it is unnecessary to reach the merits of the second prong. *Strickland*, 466 U.S. at 697. Nevertheless, the Court also finds that Zepeda has not satisfied the "prejudice" prong either, because he has not shown that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Here, Zepeda merely claims that his plea

was unwilling and involuntary. His arguments are similar to the petitioner's in *Gargano v. United States*, 852 F.2d 886, 891 (7th Cir. 1988) (emphasis in original), where he alleged that "had he been better advised, [he] would not have accepted the sentence or entered into *that* agreement." The Seventh Circuit found that, because the defendant in *Gargano* did not state that had he been properly advised, he would have insisted on going to trial, the Court found the petitioner did "not suggest that he is not guilty. He only suggests that he should have had the opportunity to strike a harder bargain with the government. This is not enough to establish prejudice." *Id.* Similarly, Zepeda does not suggest he is not guilty, or that he would have insisted on going to trial - only that he was confused, and Gambino persuaded him to plea guilty.[2] (2255 Pet., p. 9.) These allegations are insufficient to establish prejudice. Finally, as noted earlier, § 5G1.2 was not applicable to Zepeda's case because he had not yet been convicted of two of the charges when he was sentenced, and the safety valve provision did not apply to him. Therefore, there is no reasonable probability that, had Gambino advanced these arguments, Zepeda's sentence would have been different.

Lastly, the Court addresses Zepeda's request for an evidentiary

---

[2]This argument is belied by the Change of Plea transcript, to which Zepeda was provided an interpreter, and this Court extensively questioned Zepeda on his understanding of his plea, and the voluntariness of it. (May 30, 2006 Change of Plea Tr., pp. 7-14.)

hearing.  An evidentiary hearing need not be held for every section 2255 motion.  *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990).  "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court."  *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted).  Because of his or her familiarity with the evidence presented at trial, the presiding judge is uniquely suited to determine whether a hearing on a section 2255 motion is necessary.  *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989).  The Seventh Circuit has ruled that "for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported allegations."  *Prewitt*, 83 F.3d at 819 (quoting *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976)).

Here, the Court has concluded that Zepeda's claims for ineffective assistance of counsel fail.  To the extent Zepeda insinuates that Gambino allowed the Government "to separate the conspiracy, and create four diffrient [sic.] indictments, because she was under pressure by the prosecutor, U.S. Attorneys office 'for harboring an illegal alien,' so she has been helping the U.S. Attornies [sic.] Office convict people" (2255 Petition, p. 6) – this

allegation is based on only conjecture and speculation. The
interesting thing about Zepeda's request for a hearing is that
although Zepeda has not supported his bare allegations with any
evidence at all, in its response memorandum, the Government has
conceded that Gambino indeed was subject to an ARDC complaint, and
ultimately a sanction, and pointed this Court to the case of
*Lafuente v. United States*, No. 08-3670, 2010 WL 3189367 (7th Cir.
Aug. 13, 2010).

However, this case is quite different from *Lafuente*, in which
the Seventh Circuit vacated and remanded a section 2255 petition
because the district court erred by prematurely denying the motion
without discovery or evidentiary hearing. The petitioner in
*Lafuente* also had Gambino as his trial counsel, and argued he was
denied conflict-free representation because at the time of his
trial, Gambino had violated federal law by harboring an alien and
was cooperating with the Government. The Seventh Circuit found that
the Lafuente petitioner had supported his motion with more than
"mere unsupported assertions" because he provided his own affidavit
as well as the Illinois Attorney Registration and Disciplinary
Commission ("ARDC") complaint against Gambino. *Id.* at *2. The
Court also noted that Lafuente explained how he became aware of
Gambino's criminal acts: after the trial, Lafuente's father filed
an ARDC complaint and received a record of her other disciplinary
complaint. *Id.* Thus, "[t]he petitioner's pro se motion, sworn

statement, and corroborating evidence show that his allegations are plausible, and are sufficient to warrant further inquiry by the district court." *Id*.

In contrast, Zepeda did not file a sworn affidavit. Moreover, he has failed to allege any details regarding his knowledge of any alleged criminal investigation by the U.S. Attorney's Office against Gambino, including how or when he came across this information, or whether the alleged investigation against Gambino coincided with her representation of Zepeda. And, unlike Lafuente, Zepeda did not attach the ARDC complaint or any other documents corroborating his vague beliefs. Additionally, as the Government points out, Lafuente asserted that during and prior to his trial, Gambino was under investigation and facing criminal charges by the same U.S. Attorney's Office that was prosecuting him, the Northern District of Illinois. *United States v. Lafuente*, No. 08 C 160, 2008 WL 3849903, at *1 (N.D. Ill. Aug. 14, 2008). Moreover, she was being investigated and disciplined by the Illinois ARDC. *Id*. at *2. In this case, Zepeda was being prosecuted by the U.S. Attorney's Office for the Northern District of Indiana. Thus, there is much less potential for a conflict of interest. As the *Lafuente* Court states, "[i]f a criminal defendant's attorney is under investigation by the prosecutors of her client, there is a conflict." *LaFuente*, 617 F.3d at 946 (citations omitted). Here, Zepeda has put forth no facts whatsoever that the U.S. Attorney's Office for the Northern District

of Indiana was potentially investigating Gambino during the time of his representation. As such, an evidentiary hearing is not warranted.

CONCLUSION

For the reasons set forth above, the section 2255 motion is **DENIED**. The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Anselmo Zepeda, #08289-027, Atlanta-FPC, P.O. Box 150160 Lakewood Station, Atlanta, GA 30315-0182, or to such other more current address that may be on file for the Petitioner.

DATED: May 24, 2011                    /s/ RUDY LOZANO, Judge
                                       United States District Court